IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | Civ. 04-1361 AS |
| Plaintiff, | ) ) ) | FINDINGS AND RECOMMENDATION |
| v. | ) ) | |
| LITHIA SUBARU OF OREGON CITY, | ) ) | |
| Defendant. | ) ) | |
| MARK HARRIS, HUSSAIN ADEL, | ) ) ) | |
| Plaintiff-Intervenors, | ) ) | |
| v. | ) ) ) | |
| LITHIA SUBARU OF OREGON CITY, | ) ) | |
| Defendant. | ) ) | |

ASHMANSKAS, Magistrate Judge:

Defendant Lithia Subaru of Oregon City (Lithia) moves to compel arbitration of most of the claims asserted by the plaintiff-intervenors (Intervenors) and for an order staying this litigation pending the completion of arbitration. For the reasons set forth below, Lithia's motion should be denied.

Page 1 - Findings and Recommendation

## PROCEDURAL BACKGROUND

The Equal Employment Opportunity Commission (EEOC) brought this action in September 2004 alleging that Lithia discriminated against two of its former employees, Mark Harris and Hussain Adel, in violation of Title VII of the Civil Rights Act of 1964. Harris and Adel successfully moved to intervene in this case. Their complaint asserts state law claims for wrongful discharge and intentional infliction of emotional distress in addition to Title VII claims.

## FACTUAL BACKGROUND

In February 2002 Lithia purchased a car dealership previously owned by Thomason. According to Adel, representatives of Lithia met with 50 to 60 of the Thomason employees and told them to sign new employee papers "and were told that we did not have any choice but to sign every paper if we wanted to work for the new company." Adel Aff. ¶ 3. Adel states that some of the employees tried to ask questions but "management said they could not answer any questions or give explanation[s] because there was [sic] so many employees and that we should get back to work as soon as possible to begin making money for our new company." *Id. ¶ 4.* Defendant contends that these assertions are not true, and has submitted affidavits containing assertions to the contrary.

Lithia employed Adel as a salesperson between February 2002 and January 2003. Adel contends that he was wrongfully constructively discharged because of his national origin, his religion, because he complained about the workplace atmosphere, or because he associated with Harris.

Harris contends that on April 12, 2002, he signed "at least twenty" forms, including the Comprehensive Agreement Employment At-Will and Arbitration (Agreement). Harris Aff. ¶ 3.

Page 2 - Findings and Recommendation

Harris states that he asked a Lithia representative, Ms. Torson, whether he was required to sign the Agreement, and was told that signing the Agreement was a condition of employment. Harris contends that he read the Agreement and asked Ms. Torson "if I checked this box, would that show my disagreement with the #2 portion of this form. She turned the paper around and read what I was referring to and said, 'yes,' that is how she understands it, so, I checked the box and signed the form." *Id.* ¶ 5. Harris states that he believed he was not bound to submit any claims to arbitration.

Ms. Torson contends that Harris's statements are false, that she did not recall any questions about the arbitration agreement, that she would not have advised him that by checking one of the boxes he would not be bound by the agreement to arbitrate, and that she would have referred any substantive questions to defendant's human resources department. Supp. Decl. of Torson, p. 2.

Lithia employed Harris as a salesperson and floor manager between April and November 2002. Harris alleges that he was fired for complaining to Lithia about the way minority employees were treated by the dealership, and because he associated with Adel.

Harris and Adel allege that they were wrongfully discharged under Oregon law and that Lithia's acts constitute the intentional infliction of emotional distress. They assert claims under Title VII based on the same allegations that support their state law claims.

/ / /

/ / /

/ / /

The Agreement provides, in relevant part:

Page 3 - Findings and Recommendation

> I voluntarily agree that any claim, dispute and/or controversy (including but not limited to, any claims of discrimination and harassment, whether they be based on the Oregon Fair Employment Practices Act, Title VII of the Civil Rights Act of 1964, as amended, as well as all other State or federal laws or regulations) which would otherwise require, or allow resort to any court or other governmental dispute resolution forum between myself and the company...arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise...shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act in conformity with Oregon Revised Statutes 36.300, *et seq*...."
>
> . . . .
>
> I further understand that this voluntary alternative dispute resolution program shall also cover claims of discrimination or harassment under Title VII of the Civil Rights Act of 1964, as amended. By marking the box to the right, I elect to give up the benefits of arbitrating Title VII claims.

Lithia now seeks to compel arbitration, pursuant to the Agreement, of Adel's claims and Harris's state law claims. Harris and Adel contend that the Agreement is not enforceable.

## DISCUSSION

The Federal Arbitration Act (FAA) provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2 (2002). However, when grounds "exist at law or in equity for the revocation of any contract," courts may decline to enforce such agreements. *Id.; Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 683 (1996).

The Supreme Court has stated that "arbitration is a matter of contract [,]" *see United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582 (1960), and it "directs courts to place arbitration agreements on equal footing with other contracts." *EEOC v. Waffle*
Page 4 - Findings and Recommendation

*House, Inc.,* 534 U.S. 279, 293 (2002). Accordingly, arbitration agreements are subject to all defenses to enforcement that apply to contracts generally. *See* 9 U.S.C. § 2 (2002). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc.,* 517 U.S. at 687.

To evaluate the validity of an arbitration agreement, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). The court will look to Oregon law to determine whether the Agreement is unenforceable. *Ticknor v. Choice Hotels, Inc.,* 265 F.3d 931, 941 (9th Cir. 2001).

I. Agreement on Essential Terms

Harris and Abel argue that the Agreement is unenforceable because the documents they signed are blank where the name of the parties entering into the Agreement should be. Lithia's name is not on the Agreement at all, and it is referred to as "Company." Intervenors point out that defendant Lithia Subaru of Oregon City is one entity in a corporate structure that includes Lithia Rose-FT, Inc., Lithia Motors, Inc., and Lithia Ford of Roseburg. Harris and Abel contend that without the corporate party designated on the Agreement, defendant could argue that the Agreement applies to all corporate locations or travels with an employee transferred from one entity to another.

It is well-settled in Oregon that the parties must agree on all the essential terms of a contract. *Hand v. Starr-Wood Cardiac Group of Corvallis, P.C.,* 2001 WL 215803, *6 (D.Or.), citing *Pacificorp v. Lakeview Power Co.,* 131 Or.App. 301, 307 (1994). The essential terms of

a contract include "(1) the parties; (2) the subject matter; (3) the mutual promises; and (4) the price and consideration and terms of payment." *Id., citing U.S. Employees of Lane County Credit Union v. Royal,* 44 Or.App. 275, 281 (1980).

The plaintiff EEOC and the Intervenors were able to identify the corporate party to the Agreement in their complaints. There is no evidence that any of the plaintiffs were confused as to the parties to the Agreement, and it is therefore sufficiently definite to withstand Intervenors' assertion that it is unenforceable for lack of an essential term.

II. Substantive Unconscionability

Harris and Abel contend that the Agreement is unconscionable in that it does not address the issues of discovery, costs, fee-splitting, statutes of limitations or collective actions. They argue that by failing to address these issues the Agreement would subject them to oppression and unfair surprise in an arbitration.

Unconscionability " is an issue of law to be decided by the court," and "the party asserting unconscionability must demonstrate that the clause in question was unconscionable at the time the contract was made." *W.L. May Co. V. Philco-Ford Corp.,* 273 Or. 701, 707 (1975). Relying on the Uniform Commercial Code, the Oregon Court determined that the party asserting that a contract term is unconscionable bears the burden to show the term is "so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *Id. (Quotations omitted).* "The purpose behind finding a clause unconscionable is to prevent oppression and unfair surprise, not to disturb the allocation of risks because of superior bargaining power." *Id., Graziani v. Novellus Systems, Inc.,*2003 WL 23977829, 4 (D. Or.).

It is undisputed that the Agreement is a contract of adhesion. Defendant unquestionably

had superior bargaining strength and presented the Agreement as a pre-printed document with uniform language drafted and prepared entirely by defendant. The terms and conditions of the Agreement were imposed on the Intervenors without an opportunity for negotiation or modification.

In *Graziani* this court found that "an agreement to arbitrate is not *per se* unconscionable because it is a contract of adhesion mandating an exclusive forum. Rather, to be unconscionable, the agreement must also be unreasonable." Slip Op. at 5.

The arbitration agreement found reasonable in *Graziani* had several provisions that expressly favored the employer defendant, including non-mutuality of obligation, restricted discovery, fee-splitting, prohibition of collective actions, and the unilateral right to modify the agreement. Harris and Abel have not pointed to any evidence that discovery in the arbitration would be unfairly limited, that they would have to bear unreasonable costs, that they would be denied a statutory right to an award of attorney fees, or that they are deprived of their right to bring a collective action. The failure of the Agreement to address these issues does not render it unenforceable or substantively unconscionable.

The Agreement contains a confidentiality clause which provides, "Likewise, all communications during or in connection with the arbitration proceedings are privileged." The word 'privileged' is not defined.

This court has determined that a confidentiality clause was unconscionable when it provided: "Borrower and Lender agree that the arbitration proceedings are confidential. The information disclosed in such proceedings cannot be used for any purpose in any other proceeding." *Torrance v. Aames Funding Corp.,* 242 F.Supp.2d 862, 875 (D.Or. 2002). The

agreement to arbitrate at issue in *Torrance* was a standard form used by the defendant in all its loan transactions, and the court noted that the defendant stood in a "vastly superior legal posture" with respect to the borrower, citing *Ting v. AT & T,* 182 F.Supp.2d 902, 931 (N.D. Cal. 2002). *Ting* was a class action lawsuit involving a confidentiality provision in a contract that affected seven million Californians and which would interpreted largely without public scrutiny. The court found the confidentiality provision unconscionable because:

> This puts AT & T in a vastly superior legal posture since as a party to every arbitration it will know every result and be able to guide itself and take legal positions accordingly, while each class member will have to operate in isolation and largely in the dark. *Id.*

The confidentiality clause at issue is unconscionable for the same reasons. As in *Ting* and *Torrance,* defendant stands in a vastly superior legal position to its employees, and apparently uses this standard form in all of its employee agreements.

III. Procedural Unconscionability

Oregon law is not well developed on the issue of procedural unconscionability in the context of arbitration agreements. This court's task is "to predict how the state high court would resolve" the question. *Ticknor,* 265 F.3d at 939.

Under Washington law, "procedural unconscionability" is a lack of a meaningful choice, considering all the circumstances surrounding the transaction, including the manner in which the contract was entered, whether the party had a reasonable opportunity to understand the terms of the contract, and whether the important terms were hidden in a maze of fine print. *Al-Safin v. Circuit City Stores, Inc.,* 394 F.3d 1254, 1259 (9th Cir. 2005). The *Al-Safin* court noted that, in the employment context, the Washington Supreme Court has determined that substantive unconscionability alone can support a finding that a contract is invalid. However, the

Page 8 - Findings and Recommendation

Washington high court has recently declined to consider whether procedural unconscionability alone will support a determination that a contract is invalid as unconscionable. *Id.*

The second sentence of section 2 of the Agreement states in pertinent part: "...I voluntarily agree that any claim...including...any claims of discrimination...whether they be based on ...Title VII of the Civil Rights Act of 1964...shall be submitted to...binding arbitration." The last sentence of the same paragraph states: "I understand that by voluntarily agreeing to this binding arbitration provision, both I and the company give up our rights to trial by jury." Two sentences later, the last sentence of the next paragraph states, "By marking the box to the right, I elect to give up the benefits of arbitrating Title VII claims." This could be interpreted to mean that, by checking the box, an employee relinquishes the right to try or arbitrate a Title VII claim. This is an unenforceable result, as "there can be no prospective waiver of an employee's rights under Title VII." *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 51 (1974). Alternatively, an employee checking the box may believe that he or she is retaining the right to jury trial for Title VII claims waived two sentences earlier.

The Agreement does not clearly set out the important terms. It is procedurally unconscionable in that an employee does not have a reasonable opportunity to understand what rights are waived by entering into the contract.

The Ninth Circuit has extensively examined California law of unconscionability in the context of arbitration agreements between employers and employees. *Circuit City Stores, Inc. v. Mantor,* 335 F.3d 1101 (9th Cir. 2003); *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165 (9th Cir. 2003); *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889 (9th Cir. 2002).

The *Ingle* court noted:

Page 9 - Findings and Recommendation

> [t]he only claims realistically affected by an arbitration agreement
> between an employer and an employee are those claims employees
> bring against their employers. [Footnote omitted.] By essentially
> covering only claims that employees would likely bring against
> Circuit City, this arbitration agreement's coverage would be sub-
> stantively one-sided even without the express limitation to claims
> brought by employees. *Id.* at 1174.
>
> The court reasoned that "[because the possibility that Circuit City
> would initiate an action against one of its employees is so remote,
> the lucre of the arbitration agreement flows one way: the employee
> relinquishes rights while the employer generally reaps the benefits
> of arbitrating its employment disputes. *Id.*

The court concluded:

> under California law, a contract to arbitrate between an employer
> and an employee, such as the one we evaluate in this case, raises
> a rebuttable presumption of substantive unconscionability. Unless
> the employer can demonstrate that the effect of a contract to arbitrate
> is bilateral–as is required under California law-with respect to a
> particular employee, courts should presume such contracts sub-
> stantively unconscionable. *Id.*

In this case, the totality of the circumstances, including the failure to name the parties to the Agreement, the adhesive nature of the Agreement, the confidentiality clause, and the double negatives in the language allowing a party to "give up the benefits of arbitrating Title VII claims" render this Agreement unreasonable and unconscionable.

## IV. Severability

Defendant argues that, even though some provisions of the Agreement are unconscionable, the Agreement to arbitrate is not rendered invalid. The Agreement provides, "Should any term or provision, or portion thereof, be declared void or unenforceable it shall be severed and the remainder of this agreement shall be enforceable."

When a provision of an arbitration agreement is found unconscionable, a court may sever

the offending provision or refuse to enforce the entire agreement. A clause cannot be severed from a contract when it is an integrated part of the contract. *W.J. Seufert Land Co. v. Greenfield,* 262 Or. 83, 87 (1972).

Here, the offending parts of the Agreement are the complexity of the language defining the rights relinquished, the lack of clarity as to the parties, and the confidentiality provision. The entire Agreement is adhesive. Accordingly, the Agreement is so permeated by unconscionability as to render it invalid.

V. EEOC

Defendant argues that the EEOC's claims should be stayed pending the outcome of arbitration. The argument is moot in light of the unreasonableness of the arbitration agreement. In addition, the EEOC is not subject to stay under these circumstances. *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 291 (2002).

RECOMMENDATION

For the reasons set forth above, defendant's motion to compel arbitration (#14) should be denied.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

SCHEDULING ORDER

Page 11 - Findings and Recommendation

Objections to the Findings and Recommendation, if any, are due June 16, 2005. If no objections are filed, the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

Dated this 1st day June, 2005.

    /s/ Donald C. Ashmanskas
Donald C. Ashmanskas
United States Magistrate Judge